IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TERESA ANNIS,                                              1:11-cv-03157-MA

             Plaintiff,                          OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

           Defendant.

TIM WILBORN
P.O. Box 370578
Las Vegas, Nevada 89137

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

MATTHEW W. PILE
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

    Attorneys for Defendant

MARSH, Judge

Plaintiff, Teresa Annis, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act) and Supplemental Security Income (SSI) disability benefits under Title XVI of the Act. 42 U.S.C. §§ 401-434, 1381-1383f. This court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, I affirm the final decision of the Commissioner.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI on November 24, 2004 due to a history of breast cancer, "stomach problems," "a back condition," restless leg syndrome, weakness and fatigue, sleep problems, hearing loss, memory loss, eyesight loss, and migraines. Tr. 97-98. Her application was denied initially and upon reconsideration. A hearing was held before an Administrative Law Judge (ALJ) on July 12, 2007, at which plaintiff was represented by counsel and testified. Vocational Expert (VE) Lynn Jones was present throughout the hearing and testified.

On August 22, 2007, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. After the Appeals Council declined review of the ALJ's decision, plaintiff sought review of that decision in this court. Based on the

stipulation of the parties, this court remanded the case back to the Commissioner for reevaluation of the plaintiff's credibility, lay witness testimony, medical evidence, and plaintiff's medically determinable impairments. Annis v. Comm'r Soc. Sec. Admin., No. 3:09-cv-103-MA (#18).

On remand, the ALJ held a second hearing where plaintiff testified and was represented by counsel. On September 8, 2010, the ALJ issued a second decision finding plaintiff not disabled within the meaning of the Act. After the Appeals Council denied review, plaintiff timely filed the instant action.

### FACTUAL BACKGROUND

Born on November 28, 1956, plaintiff was 47 years old on the alleged onset date of disability, and 53 years old on the date of the hearing on remand. Plaintiff has an eleventh grade education and additional training as a dental assistant. Tr. 610. Plaintiff has past relevant work as a dental assistant and office manager. Tr. 633.

Plaintiff alleged her various ailments became disabling on December 22, 2003. In addition to her hearing testimony, plaintiff submitted two Adult Function Reports, two Pain Questionnaires, and two Fatigue Questionnaires. Plaintiff's mother, Wilma Darlene Reeves, submitted two Third Party Function Reports. Rita Sullivan, Ph.D., evaluated plaintiff and prepared a Psychodiagnositc Evaluation. E. Choy White-Chu, M.D., evaluated plaintiff and

3 - OPINION

submitted an opinion regarding plaintiff's physical ailments. David R. Gilmour, M.D., was plaintiff's primary treating physician and submitted letters dated October 24, 2008, and February 20, 2008, respectively.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Each step is potentially dispositive. The claimant bears the burden of proof at Steps One through Four. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at Step Five to show that a significant number of jobs exist in the national economy that the claimant can perform. See Yuckert, 482 U.S. at 141-42; Tackett, 180 F.3d at 1098.

At Step One, the ALJ determined that plaintiff engaged in substantial gainful activity in 2006. The ALJ, however, found that plaintiff had not engaged in substantial gainful activity during the remainder of the period plaintiff claimed disability. See 20 C.F.R. §§ 404.1571 et seq., 416.971 et seq.; Tr. 654.

At Step Two, the ALJ determined that plaintiff's right upper extremity weakness, status post right breast cancer, tendinitis in the non-dominant right wrist, status post open reduction internal fixation, fibromyalgia, and personality disorder with dependent

4 - OPINION

features are severe impairments. See 20 C.F.R. §§ 404.1520(c), 416.920(c); Tr. 654. The ALJ, however, found that plaintiff's depressive, anxiety, and pain disorders are not severe impairments. Tr. 654-55. Additionally, the ALJ found that plaintiff's joint and nervous system impairments, lupus, carpal tunnel syndrome, and migraine headaches were not medically determinable impairments. Tr. 655-57. Finally, the ALJ found that plaintiff's possible colon cancer, possible removal of her gall bladder, restless leg syndrome, hearing loss, impaired eyesight, and high blood pressure were unsupported by medical evidence, had not lasted more than 12 consecutive months, or had been controlled with medication, and accordingly should not be considered in the sequential evaluation. Tr. 657.

At Step Three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled any listed impairment. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926; Tr. 657-58.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform the full range of light work, except that she should have the opportunity to stand or sit; should push and pull with the right upper extremity only occasionally; should avoid forceful twisting with both hands; and should have only occasional interaction with the public. Tr. 658-63.

At Step Four, the ALJ determined that plaintiff was not capable of performing past relevant work as a dental assistant or office manager. See 20 C.F.R. §§ 404.1565, 416.965; Tr. 663.

At Step Five, however, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff can perform, including courier, mail clerk, and table worker. See 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a); Tr. 663-64.

Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff asserts the ALJ erred in five ways. First, plaintiff maintains that the ALJ improperly discounted plaintiff's testimony. Second, plaintiff asserts that the ALJ improperly weighed the medical testimony by rejecting the opinions of Drs. White-Chu and Gilmour. Third, plaintiff argues that the ALJ improperly rejected the testimony of Wilma Reeves, plaintiff's mother. Fourth, plaintiff maintains that the vocational hypothetical was invalid because it did not include all of plaintiff's limitations. Finally, plaintiff argues that the ALJ improperly determined that plaintiff's work activity in 2006 constituted substantial gainful activity.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are

supported by substantial evidence in the record.    42 U.S.C. §
405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).
"Substantial evidence means more than a mere scintilla but less
than a preponderance; it is such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion." Id.    The
court must weigh all of the evidence, whether it supports or
detracts from the Commissioner's decision.    Martinez v. Heckler,
807 F.2d 771, 772 (9th Cir. 1986).    If the evidence is susceptible
to more than one rational interpretation, the Commissioner's
decision must be upheld.    Andrews, 53 F.3d at 1039-40.    If the
evidence supports the Commissioner's conclusion, the Commissioner
must be affirmed; "the court may not substitute its judgment for
that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152,
1156 (9th Cir. 2001).

## DISCUSSION

### I.    Rejection of Plaintiff's Testimony

Plaintiff first argues that the ALJ improperly rejected her
testimony.    The ALJ rejected plaintiff's testimony about the extent
of her limitations because it was not supported by evidence in the
medical record, plaintiff cancelled prescribed therapy
appointments, and demonstrated secondary gain motives.

In deciding whether to accept subjective symptom testimony, an
ALJ must perform two stages of analysis.    20 C.F.R. §§ 404.1529,
416.929.    First, the claimant must produce objective medical

7 - OPINION

evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). Second, absent a finding of malingering, the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. Id. at 1281.

If an ALJ finds that the claimant's testimony regarding his subjective symptoms is unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." Morgan v. Apfel, 169 F.3d 595, 599 (9th Cir. 1999). In doing so, the ALJ must identify what testimony is credible and what testimony undermines the claimant's complaints, and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ may rely upon ordinary techniques of credibility evaluation in weighing the claimant's credibility. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

In her Disability Report, plaintiff described the conditions that caused her inability to work as follows:

> Breast cancer, lymphnodes/right wrist/elbows. I have blood in my stool - [I] may have colon cancer. I may have to have my gall bladder removed. I have severe stomach problems - I don't ever know when this is going to happen - nausea and vomiting. I also suffer from a back condition. I have restless leg syndrome and they ache. Weakness and fatigue. Sleep problems. Migraines.

> I have hearing loss.  I also have memory loss along with
> eye sight problems - this from the chemotherapy [I] had
> back in 2001 when [I] was first diagnosed with breast
> cancer.  I have very high blood pressure.

Tr. 97-98.

In her Function Reports, Pain Questionnaires, and Fatigue Questionnaires plaintiff described largely sedentary daily activities, primarily consisting of resting, watching television, reading, and performing routine chores.  See Tr. 109-24, 160-74. Plaintiff alleged that her various conditions affected her ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, climb stairs, see, complete tasks, concentrate, understand, use her hands, and remember.  Tr. 118.

At her initial hearing, plaintiff testified that the primary conditions that prevented her from working were her back pain, neuropathy and weakness in her hands and feet, and hearing impairment.  Tr. 620-21.  Plaintiff also testified that she must take naps several times per day for between thirty minutes and two hours.  Tr. 626-27.  Plaintiff testified that she could sit for approximately one hour before she needed to stand and stretch.  Tr. 627-28.  Plaintiff stated that an injury to her right wrist prevented her from lifting with that hand at all, and that her back problems limited the amount she could lift with her left.  Tr. 628-29.  Plaintiff additionally stated that her personality disorder makes her panic around large groups of people.  Tr. 630.

9 - OPINION

The ALJ found that plaintiff's medically determinable impairments could not reasonably be expected to cause the alleged symptoms, and that plaintiff's testimony was not credible. Tr. 654-63.[1] The ALJ discredited plaintiff's testimony because many of plaintiff's alleged limitations were not supported by the medical record. Lack of objective evidence of a claimant's alleged limitations cannot be the sole reason for discounting the claimant's testimony, but can be clear and convincing when cited in combination with other reasons supported by substantial evidence. See Thomas, 278 F.3d at 960. This finding is supported by substantial evidence in the record.

As the ALJ noted, plaintiff's allegations of difficulty hearing are not supported by the medical record. There is no medical evidence in the record regarding plaintiff's hearing difficulties or any of plaintiff's alleged surgeries. Additionally, plaintiff reported to evaluating psychologist Dr. Sullivan that her hearing was good. Tr. 299. This inconsistent statement and lack of medical evidence is significant in light of plaintiff's testimony that hearing impairment was one of the primary causes of her disability. The ALJ properly discounted plaintiff's testimony as to her hearing limitations.

---

[1] Because I find that the ALJ cited clear and convincing reasons to discredit the plaintiff's testimony, I decline to address whether plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.

Additionally, as the ALJ discussed, plaintiff's wrist pain and numbness caused by carpal tunnel syndrome lacked supporting medical evidence.   Plaintiff's wrist problems apparently began after she fell and broke her right wrist in 2003, requiring surgery. Plaintiff's surgery appears to have gone well, however, as she reported doing well 11 days after the surgery and was mostly healed six weeks post operation.  Tr. 241-42.  Plaintiff cancelled her final follow up appointment with her surgeon.  Tr. 240.  While plaintiff continued to complain of wrist pain into 2007, and did display positive Tinel signs on occasion, she cancelled all of her prescribed hand therapy appointments,[2] and an electrodiagnostic evaluation of both extremities revealed no evidence of carpal tunnel syndrome or other wrist neuropathy.  Tr. 497, 831-32.  Based on plaintiff's cancellation of hand therapy appointments and the negative objective testing, the ALJ could reasonably discredit plaintiff's testimony as to her wrist pain because the extent of her symptoms was not supported by the medical record and plaintiff did not follow through with prescribed medical treatment.

---

[2] Plaintiff now argues that this was not a proper basis for discrediting her testimony because she cancelled her hand therapy appointments due to her lack of insurance and inability to pay. Plaintiff told the clinic at the time, however, that she was cancelling all of her appointments due to illness, and did not cite lack of insurance as a reason.  Tr. 497.  The ALJ reasonably cited plaintiff's failure to seek prescribed medical treatment as a basis to discredit her testimony.  See Tr. 662; Tommasetti, 533 F.3d at 1039.

The ALJ also noted that plaintiff's back pain was not supported by medical evidence. Plaintiff's back pain is inconsistent throughout the medical record. During some visits with Dr. Gilmour, plaintiff reported significant back pain. E.g. Tr. 761 (3/12/10), 764 (11/12/09), 771 (7/21/09), 776 (3/30/09), 796-97 (10/4/07). During other visits, however, plaintiff reported no, or limited back pain. E.g., Tr. 759-60 (6/18/10), 767-68 (9/3/09), 778-79 (1/13/09), 782-83 (9/18/08), 784-85 (7/11/08), 786-87 (4/25/08), 792 (12/21/07), 794 (10/16/07). While one image of her back suggested the presence of an old compression fracture, the radiological examinations of her back were generally either normal or showed only mild degenerative changes. Tr. 308, 461, 496. Thus, the ALJ could properly conclude that the medical record did not support the full extent of plaintiff's allegations of significant back limitations.

The ALJ also correctly noted that plaintiff alleged several conditions that are unsupported in the record, had resolved within twelve months, or were sufficiently controlled by medication. The medical record does not support plaintiff's allegations of joint or nervous system impairments, lupus, possible colon cancer, gall bladder removal, or restless leg syndrome. In sum, the ALJ properly discounted plaintiff's subjective testimony in part on the basis that many of plaintiff's alleged limitations were unsupported by the medical record.

The ALJ further discounted plaintiff's testimony on the ground that plaintiff showed secondary gain motives in seeking narcotic pain medication.  The ALJ made this finding based on Dr. Sullivan's evaluation note stating that plaintiff displayed drug-seeking behavior.  Tr. 301, 661.  An ALJ may discredit a claimant's subjective testimony because there is evidence of secondary gain motives and drug-seeking behavior.  See Edlund, 253 F.3d at 1157. Substantial record evidence supports the ALJ and Dr. Sullivan's finding.

On November 22, 2002, plaintiff told her then-treating physician, Dr. Easton, that she had a history of problems with addiction to narcotics.  Tr. 378.  Nonetheless, Dr. Easton gave plaintiff a prescription for Vicodin.  Id.

On December 11, 2003, plaintiff was taken to the emergency room on suspicion of a prescription narcotics overdose.  Tr. 223. At plaintiff's initial hearing, she testified as follows with regard to this event:

```
Attorney:      Yeah, well, you were found nonresponsive
               in December of 2003 and taken to the
               hospital.
Plaintiff:     Uh-huh
Attorney:      What occurred on that occasion?
Plaintiff:     I went home.
                         . . .
Attorney:      What occurred?
Plaintiff:     I was in the kitchen.  I went home.  I
               was in the kitchen and I passed out.
Attorney:      For what reason?
Plaintiff:     I don't know.  So everybody took me there
               and they had some little prescription
```

> bottles in my drawer and they took them
> all to the ER and they set up there and
> I'm like, and I do not drink.

Tr. 631-32. At the hospital, however, plaintiff admitted that she
had taken several Soma and several Vicodin, as well as consumed
alcohol. Tr. 223. Plaintiff's lack of candor about the apparent
narcotic overdose that led to her presentation to the emergency
room and use of alcohol supports the ALJ's rejection of plaintiff's
testimony due to her secondary gain motives and drug-seeking
behavior.[3] Tr. 631.

The ALJ's findings and Dr. Sullivan's conclusion that
plaintiff had secondary gain motives to obtain narcotic pain
medication is supported by substantial record evidence. Plaintiff
also presented to doctors on two occasions claiming that her
narcotic pain medication had been stolen. On August 12, 2006,
plaintiff presented to the emergency room with narcotic withdrawal
symptoms and told physicians that her pain medication had been
stolen two days before, but that she had not filed a police report.
Tr. 479-81. On November 12, 2009, Dr. Gilmour's notes indicate
both that plaintiff lost her medication when her luggage was lost

---

[3] Additionally, Dr. Sullivan noted that plaintiff admitted
that she had previously received two Driving Under the Influence
of Intoxicants citations, including one approximately one year
prior to the evaluation. Tr. 295.

during a trip to Washington state, and that plaintiff's pain medication had recently been stolen.[4]  Tr. 764-65.

Finally, a review of the medical record reveals a trend of plaintiff's pain complaints occurring frequently during medication check appointments and relatively infrequently during other doctor visits.  <u>Compare</u> Tr. 513-14, 547, 551, 761, 764, 770-71, 773-77 (back pain complaints during medication check visits), <u>with</u> Tr. 541, 544, 767-68, 782-83, 784-85, 792, 794, 798, 805-06 (no back pain during other physician visits); <u>but see</u> Tr. 759-60, 786-87, 796-97 (varying from trend).  Based on this extensive substantial evidence in the record, the ALJ appropriately discounted plaintiff's credibility on the basis of her drug-seeking behavior and secondary gain motives.  I conclude that the ALJ's reasons, when taken together, constitute clear and convincing reasons for rejecting plaintiff's testimony.

## II.  Rejection of Medical Testimony

Plaintiff argues that the ALJ improperly discredited the opinions of Drs. Gilmour and White-Chu.  Generally, greater weight is given to the opinion of a physician who treats the claimant than to that of a physician who merely examines the claimant.  <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995).  The Commissioner must

---

[4] It is unclear if this inconsistency is attributable to a mistake made by Dr. Gilmour or inconsistent statements made by plaintiff.

provide clear and convincing reasons to reject the uncontradicted opinion of a treating or examining physician. Id. 830-31. Where a treating physician's opinion is contradicted by that of an examining physician, the ALJ may reject the treating physician's opinion only by providing specific and legitimate reasons supported by substantial evidence in the record. Id. "'The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)). "'Where, as here, the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict.'" Id. (quoting Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003)). The ALJ is responsible for translating the claimant's medical conditions into functional limitations in the RFC. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).

As relevant here, on February 20, 2008, Dr. Gilmour submitted a letter opining that "[b]ecause of her multiple severe medical problems, [plaintiff] has been unable to work or do any significant activity for more than 15-20 minutes at a time several times a day. She has basically been house bound for the past 4-5 years." Tr. 595.

Dr. White-Chu opined that plaintiff would be able to stand or walk for six hours during an eight-hour day, although "[s]he may need rest every half hour for about five minutes given the possible degenerative joint disease in her back and neck." Tr. 307. Dr. White-Chu assigned no sitting restrictions, except to note that plaintiff would "benefit from standing up every half hour for about 5-10 minutes to stretch out her neck and back." Id. Dr. White-Chu opined that plaintiff could lift or carry 20 pounds occasionally, and 10 pounds frequently, should have the "standard back precautions," and may have difficulty with pulling due to right arm weakness. Id.

The ALJ limited plaintiff to light work with the option to either sit or stand, occasional pushing and pulling, no forceful twisting with either hand, and only occasional interaction with the public. Tr. 658. Plaintiff argues that if Dr. White-Chu's "rest" recommendation meant plaintiff would have to lie down for five minutes every half hour, based on the VE's testimony, plaintiff would be disabled. Thus, plaintiff maintains the ALJ rejected this portion of Dr. White-Chu's opinion by not including the lying down limitation in the RFC.

Here, however, the ALJ accounted for Dr. White-Chu's finding that plaintiff may need rest every half hour for five minutes by requiring that plaintiff have the option to either sit or stand. The ALJ, then, interpreted Dr. White-Chu's "rest" recommendation to

mean that the plaintiff would have to sit for five minutes every half hour. This is a reasonable interpretation in light of the immediately preceding sentence, which stated that plaintiff has the ability to stand or walk for six hours out of an eight-hour day. Tr. 307. That plaintiff may have an alternative interpretation of Dr. White-Chu's statement is irrelevant; the ALJ is tasked with translating the medical testimony into functional limitations in the RFC. See Stubbs-Danielson, 539 F.3d at 1174. Here, the ALJ's interpretation of Dr. White-Chu's opinion was reasonable, and the ALJ accordingly accounted for the limitations contained therein in the RFC. The ALJ did not reject Dr. White-Chu's opinion.

Plaintiff next argues that the ALJ improperly rejected Dr. Gilmour's opinion. Because Dr. Gilmour's opinion was contradicted by Dr. White-Chu, the ALJ was required to cite specific and legitimate reasons, supported by substantial evidence in the record, to reject Dr. Gilmour's opinion. Lester, 81 F.3d at 830-31. The ALJ rejected Dr. Gilmour's opinion because Dr. Gilmour was not aware of plaintiff's "substantial gainful activity" in 2006; the opinion relied on plaintiff's subjective symptom testimony; was inconsistent with Dr. Gilmour's own chart notes; and was unsupported by, and inconsistent with, the medical record as a whole. Tr. 659. I conclude that these reasons amount to specific and legitimate reasons, backed by substantial evidence in the record, to reject Dr. Gilmour's opinion.

First, the ALJ could properly find that Dr. Gilmour's assertion that plaintiff had been "house bound" for the past 4-5 years is incorrect.[5] Plaintiff earned $7,649.13 for work at a dental office and retail store in 2006. Tr. 96, 610-11. Additionally, plaintiff's Function Reports state that she goes outside daily, can ride in a car, and is able to go out alone, again undermining Dr. Gilmour's statement that plaintiff has been "house bound." Tr. 170. Moreover, Dr. Gilmour's statement that plaintiff is "unable to work or do any significant activity for more than 15-20 minutes at a time several times a day" is contradicted by plaintiff's testimony that she worked four three-hour shifts per week at a retail store in 2006. Tr. 611-12, 791. Thus, the ALJ could properly discredit Dr. Gilmour's opinion on this basis.

Second, the ALJ could properly discount Dr. Gilmour's opinion based on the fact that he relied extensively on plaintiff's subjective symptoms. A doctor's opinion may be rejected on the basis that it relied on plaintiff's properly discredited subjective

_____

[5] Plaintiff argues that the ALJ's description of plaintiff's work activities as "substantial gainful activity" makes this finding error. I disagree. While there is question about whether plaintiff's 2006 work activities constituted "substantial gainful activity" for purposes of Step One of the sequential analysis, that finding is insignificant for purposes of weighing Dr. Gilmour's opinion. Simply put, plaintiff's 2006 work activities contradict Dr. Gilmour's statement that plaintiff was house bound regardless of whether they met the technical threshold of "substantial gainful activity."

testimony.  Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009).  As discussed above, there is little objective evidence supporting the extent of plaintiff's alleged back pain, wrist pain, and lupus.  To the extent Dr. Gilmour opined that such conditions caused plaintiff's disability, that opinion relied considerably on plaintiff's subjective symptoms.  Because the ALJ properly discredited plaintiff's testimony, the ALJ properly rejected Dr. Gilmour's opinion based on plaintiff's subjective reporting.

Third, the ALJ rejected Dr. Gilmour's opinion because it was unsupported by, and inconsistent with, the findings of other doctors.  Tr. 659.  This finding is also supported by substantial evidence.  Specifically, Dr. Gilmour opined that plaintiff is significantly limited by the symptoms of lupus, as diagnosed by Dr. Dryland.  Tr. 595.  To the contrary, however, Dr. Dryland found that only "very mild lupus [was] possible . . . but not dangerous or definite at all."  Tr. 458.  Three months later, Dr. Dryland further stated "[d]oubt any lupus at all with repeat visits."  Tr. 453.  The ALJ could reasonably reject Dr. Gilmour's opinion on this basis.  These reasons, taken together, constitute specific and legitimate reasons to reject Dr. Gilmour's opinion.  The ALJ appropriately weighed the medical testimony.

///

///

20 - OPINION

III. **Rejection of Lay Testimony**

    Plaintiff asserts that the ALJ erred in discounting the lay testimony of Wilma Reeves, plaintiff's mother. Lay testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence that an ALJ must take into account. Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012). To discount lay witness testimony, the ALJ must give reasons that are germane to the witness. Id.

    Ms. Reeves submitted two Third Party Function Reports. Ms. Reeves stated that on a typical day, plaintiff tries to shower and brush her teeth, and, depending on how plaintiff feels, Ms. Reeves helps her dress. Tr. 133. Other days, however, Ms. Reeves stated plaintiff is in too much pain to get out of bed. Id. Ms. Reeves reported that she did plaintiff's hair for her, reminds plaintiff to take her cancer medication, and sometimes cooks meals for plaintiff and helps with shopping. Tr. 134-37. Ms. Reeves reported that plaintiff cannot do any lawn mowing or cleaning, and could only do laundry in small loads. Tr. 135.

    The ALJ discounted Ms. Reeves's testimony because it was, at times, inconsistent with limitations described by plaintiff. Specifically, the ALJ discounted Ms. Reeves's description of plaintiff's limitations because it was occasionally greater than the limitations described by plaintiff herself. As the ALJ noted, Ms. Reeves stated that plaintiff has a great deal of difficulty in

personal care, including the inability to raise out of the bathtub, do her hair, and trouble shaving her underarms and legs.  Tr. 134. Plaintiff's stated limitations were somewhat less, however, as she reported that she bathed "ok" with the exception of sometimes having trouble washing her hair, and that she only had trouble caring for her hair because she could not hold her arms up "for periods of time."  Tr. 114.  In a later Function Report, plaintiff noted even fewer limitations, saying she dressed and bathed "ok," and that she only had trouble buttoning a shirt with a lot of buttons or zipping.  Tr. 168.

Additionally, Ms. Reeves stated that plaintiff did not take care of anybody else, and "is lucky if she can care for herself," yet, plaintiff reported to Dr. Gilmour on April 10, 2007 that she "cares for [her] brain disabled brother."  Tr. 153, 806.  Ms. Reeves also stated that plaintiff does chores around the house "not often" because "[i]t hurts her to do housework."  Tr. 154.  Yet, plaintiff reported that she does laundry, waters the plants, and goes grocery shopping on a weekly basis.  Tr. 169.  Finally, contrary to Ms. Reeves's report, plaintiff never indicated that she cannot get out of bed some days, but rather that she is frequently awoken and must get out of bed to stretch, walk around, or take a hot shower.  Tr. 133, 162.

Plaintiff argues that these differences could merely be differences in perception rather than true inconsistencies between

Ms. Reeves's description of plaintiff's limitations and plaintiff's own testimony.  The question, however, is not whether the ALJ's interpretation is the *only* rational interpretation, but rather whether the ALJ's interpretation of the evidence was rational. Here, the ALJ could rationally interpret these differences as inconsistencies, and discount Ms. Reeves's testimony on this basis. See <u>Andrews</u>, 53 F.3d at 1039-40 (stating that if the evidence is susceptible to more than one rational interpretation, the Commissioner's interpretation must be upheld). Because I find the ALJ "noted arguably germane reasons" for discounting Ms. Reeves's description of plaintiff's functional limitations, the ALJ did not err in discrediting Ms. Reeves's testimony.[6]  See <u>Lewis v. Apfel</u>, 236 F.3d 503, 512 (9th Cir. 2001).

## IV. **Vocational Hypothetical and Substantial Gainful Activity**

A vocational hypothetical is sufficient if it includes all of the claimant's limitations that are supported by substantial evidence in the record.  See <u>Bayliss v. Barnhart</u>, 427 F.3d 1211,

---

[6] Although I do not consider it in my review of the ALJ's finding that Ms. Reeves's described limitations were inconsistent with plaintiff's, I note that there are at least two different handwriting styles on Ms. Reeves's Function Reports.  <u>Compare</u> Tr. 135 <u>with</u> Tr. 140; 152-54 <u>with</u> 157-59.  Some of the handwriting on Ms. Reeves's Function Reports is similar to handwriting on plaintiff's Function Reports.  <u>Compare</u> Tr. 152-54 <u>with</u> 167-74. There is no record evidence indicating Ms. Reeves required help filling out forms.

1217-18 (9th Cir. 2005).    An ALJ may exclude limitations

unsupported by substantial evidence.  Id.

I have concluded that the ALJ properly discredited plaintiff's

subjective testimony, permissibly weighed the medical testimony,

and reasonably discounted the lay testimony.   The limitations

included in the RFC and hypothetical were those that the ALJ found

to be credible and supported by substantial evidence in the record.

Thus, the hypothetical was sufficient, and it was proper for the

ALJ to rely on the VE's answer.

Additionally, because I conclude that the ALJ properly found

that the plaintiff was not disabled within the meaning of the Act,

any error in finding that plaintiff's work activity in 2006

constituted substantial gainful activity is harmless.  Accordingly,

I do not reach whether the ALJ erred at Step One.

## CONCLUSION

For the foregoing reasons, the decision of the ALJ is

AFFIRMED.

IT IS SO ORDERED.

DATED this _13_ day of February, 2013.

_Malcolm F. Marsh_
Malcolm F. Marsh
United States District Judge